**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE GRAFF,<br><br>               Plaintiff,<br><br>     vs.<br><br>HASHICORP, INC., DAVE MCJANNET, ARMON DADGAR, GLENN SOLOMON, SUSAN ST. LEDGER, TODD FORD, SIGAL ZARMI, and DAVID HENSHALL,<br><br>               Defendants. | Case No.:  3:24-cv-3468<br><br>**Complaint For:**<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Michelle Graff ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against HashiCorp, Inc. ("HashiCorp" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts

to sell the Company to International Business Machines Corporation ("Parent"), through merger vehicle McCloud Merger Sub, Inc. ("Merger Sub" and together with Parent, "IBM"), as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in an April 25, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, IBM will acquire all outstanding shares of HashiCorp common stock for $35.00 per share in cash, for an enterprise value of $6.4 billion.

3. Thereafter, on June 3, 2024, the Company filed a Preliminary Proxy Statement on Form PREM14A with the SEC in support of the Proposed Transaction (the "Proxy Statement").

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: (a) Company insiders own large illiquid blocks of Company stock which will be converted into merger consideration; (b) Company insiders own vested and unvested RSU awards, and other equity awards, all of which are subject to accelerated vesting and conversion into merger consideration; and (c) certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5. The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction and is thus in violation of the Exchange Act. As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for HashiCorp, provided by HashiCorp management to the Company Board, the committee of the HashiCorp Board (the "M&A Committee"), and the Board's financial advisor,

1  Qatalyst Partners LP ("Qatalyst"); and (c) the data and inputs underlying the financial valuation
2  analyses, if any, that purport to support the fairness opinion created by Qatalyst if any, and
3  provided to the Company and the M&A Committee.

4  6. Absent judicial intervention, the Proposed Transaction will be consummated,
5  resulting in irreparable injury to Plaintiff.

## PARTIES

7. Plaintiff is a citizen of California, and at all times relevant hereto, has been a HashiCorp stockholder.

8. Defendant HashiCorp engages in the provision of multi-cloud infrastructure automation solutions worldwide. The Company is incorporated in Delaware and has its principal place of business at 101 Second Street, Suite 700, San Francisco, CA 94105. Shares of HashiCorp common stock are traded on the NASDAQ Stock Market under the symbol "HCP."

9. Defendant Dave McJannet ("McJannet") has been a Director of the Company at all relevant times. In addition, Defendant McJannet serves as the Company's Chief Executive Officer ("CEO").

10. Defendant Armon Dadgar ("Dadgar") has been a director of the Company at all relevant times. In addition, Defendant Dadgar is a Co-founder of the Company and serves as its Chief Technology Officer ("CTO").

11. Defendant Glenn Solomon ("Solomon") has been a director of the Company at all relevant times. In addition, Defendant Solomon was appointed to the Company M&A Committee.

12. Defendant Susan St. Ledger ("St. Ledger") has been a director of the Company at all relevant times. In addition, Defendant St. Ledger serves as the Company's President, Worldwide Field Operations.

13. Defendant Todd Ford ("Ford") has been a director of the Company at all relevant times. In addition, Defendant Ford was appointed to the Company's M&A Committee.

14. Defendant Sigal Zarmi ("Zarmi") has been a director of the Company at all relevant times.

15. Defendant David Henshall ("Henshall") has been a director of the Company at all relevant times. In addition, Defendant Henshall was appointed to the Company M&A Committee.

16. Defendants identified in ¶¶ 9 - 15 are collectively referred to as the "Individual Defendants."

17. Non-Party IBM together with its subsidiaries, provides integrated solutions and services worldwide.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

19. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

21. HashiCorp engages in the provision of multi-cloud infrastructure automation solutions worldwide.

22. In a press release on March 5, 2024, for the Fourth Quarter and Fiscal Year 2024 Financial Results, the Company highlighted its performance results and financial success. For example: Fourth quarter revenue totaled $155.8 million, representing an increase of 15% year-over-year; fiscal 2024 revenue totaled $583.1 million, representing an increase of 23% year-over-year; fourth quarter total GAAP RPO totaled $775.8 million, representing an increase of 20% year-over-year; and fourth quarter total non-GAAP RPO totaled $801.4 million, representing an increase of 19% year-over-year; fourth quarter current non-GAAP RPO totaled $483.1 million, representing an increase of 21% year-over-year.

23. Speaking on the results, Defendant CEO McJannet stated, "The HashiCorp team closed fiscal 2024 strong in Q4, with results that exceeded expectations."

24. Defendant McJannet further stated, "In fiscal 2025, we are doubling down on initiatives to simplify our go-to-market, improve our product monetization, and focus our business on the HashiCorp Cloud Platform. These efforts will help us reaccelerate our revenue growth in the new fiscal year."

25. These financial results are not an anomaly, but rather, are indicative of a trend of continued success by HashiCorp. Based upon these positive results and outlook, the Company is likely to have future success.

26. Despite this upward trajectory, the Individual Defendants have caused HashiCorp to enter into the Proposed Transaction without providing requisite information to HashiCorp stockholders such as Plaintiff.

*The Flawed Sales Process*

27. As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company.

28. The Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and IBM, whether this agreement differed from any other

1 agreement with potentially interested third parties not specifically mentioned by the Proxy
2 Statement, if so, in all specific manners.

3     29. Further, the Proxy Statement fails to adequately disclose any and all of the
4 communications regarding post-transaction employment during the negotiation of the underlying
5 transaction which must be disclosed to stockholders.

6     30. It is not surprising, given this background to the overall sales process, that it was
7 conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

    31. On April 24, 2024, HashiCorp and IBM issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> ARMONK, N.Y. and SAN FRANCISCO, April 24, 2024 /PRNewswire/ -- IBM (NYSE: IBM) and HashiCorp Inc. (NASDAQ: HCP), a leading multi-cloud infrastructure automation company, today announced they have entered into a definitive agreement under which IBM will acquire HashiCorp for $35 per share in cash, representing an enterprise value of $6.4 billion. HashiCorp's suite of products provides enterprises with extensive Infrastructure Lifecycle Management and Security Lifecycle Management capabilities to enable organizations to automate their hybrid and multi-cloud environments. Today's announcement is a continuation of IBM's deep focus and investment in hybrid cloud and AI, the two most transformational technologies for clients today.
>
> "Enterprise clients are wrestling with an unprecedented expansion in infrastructure and applications across public and private clouds, as well as on-prem environments. The global excitement surrounding generative AI has exacerbated these challenges and CIOs and developers are up against dramatic complexity in their tech strategies," said Arvind Krishna, IBM chairman and chief executive officer. "HashiCorp has a proven track record of enabling clients to manage the complexity of today's infrastructure and application sprawl. Combining IBM's portfolio and expertise with HashiCorp's capabilities and talent will create a comprehensive hybrid cloud platform designed for the AI era."
>
> The rise of cloud-native workloads and associated applications is driving a radical expansion in the number of cloud workloads enterprises are managing. In addition, generative AI deployment continues to grow alongside traditional workloads. As a result, developers are working with increasingly heterogeneous, dynamic, and complex infrastructure strategies. This represents a massive challenge for technology professionals.

HashiCorp's capabilities enable enterprises to use automation to deliver lifecycle management for infrastructure and security, providing a system of record for the critical workflows needed for hybrid and multi-cloud environments. HashiCorp's Terraform is the industry standard for infrastructure provisioning in these environments. HashiCorp's offerings help clients take a cloud-agnostic, and highly interoperable approach to multi-cloud management, and complement IBM's commitment to industry collaboration (including deep and expanding partnerships with hyperscale cloud service providers), developer communities, and open-source hybrid cloud and AI innovation.

"Our strategy at its core is about enabling companies to innovate in the cloud, while providing a consistent approach to managing cloud at scale. The need for effective management and automation is critical with the rise of multi-cloud and hybrid cloud, which is being accelerated by today's AI revolution," said Armon Dadgar, HashiCorp co-founder and chief technology officer. "I'm incredibly excited by today's news and to be joining IBM to accelerate HashiCorp's mission and expand access to our products to an even broader set of developers and enterprises."

"Today is an exciting day for our dedicated teams across the world as well as the developer communities we serve," said Dave McJannet, HashiCorp chief executive officer. "IBM's leadership in hybrid cloud along with its rich history of innovation, make it the ideal home for HashiCorp as we enter the next phase of our growth journey. I'm proud of the work we've done as a standalone company, I am excited to be able to help our customers further, and I look forward to the future of HashiCorp as part of IBM."

**Transaction Rationale**

- **Strong Strategic Fit** – The acquisition of HashiCorp by IBM creates a comprehensive end-to-end hybrid cloud platform built for AI-driven complexity. The combination of each company's portfolio and talent will deliver clients extensive application, infrastructure and security lifecycle management capabilities

- **Accelerates growth in key focus areas** – Upon close, HashiCorp is expected to drive significant synergies for IBM, including across multiple strategic growth areas like Red Hat, watsonx, data security, IT automation and Consulting. For example, the powerful combination of Red Hat's Ansible Automation Platform's configuration management and Terraform's automation will simplify provisioning and configuration of applications across hybrid cloud environments. The two companies also anticipate an acceleration of HashiCorp's growth initiatives by leveraging IBM's world-class go-to-market strategy, scale, and reach, operating in more than 175 countries across the globe

- **Expands Total Addressable Market (TAM)** – The acquisition will create the opportunity to deliver more comprehensive hybrid and multi-cloud offerings to enterprise clients. HashiCorp's offerings, combined with IBM and Red Hat, will give clients a platform to automate the deployment and orchestration of workloads across evolving infrastructure including hyperscale cloud service providers, private clouds and on-prem environments. This will enhance IBM's ability to address the total cloud opportunity, which according to IDC had a TAM of $1.1 trillion in 2023, with a compound annual growth rate in the high teens through 2027.

- **Attractive Financial Opportunity** – The transaction will accelerate IBM's growth profile over time driven by go-to-market and product synergies. This growth combined with operating efficiencies, is expected to achieve substantial near-term margin expansion for the acquired business. It is anticipated that the transaction will be accretive to Adjusted EBITDA within the first full year, post close, and free cash flow in year two.

HashiCorp boasts a roster of more than 4,400 clients, including Bloomberg, Comcast, Deutsche Bank, GitHub, J.P Morgan Chase, Starbucks and Vodafone. HashiCorp's offerings have widescale adoption in the developer community and are used by 85% of the Fortune 500. Their community products across infrastructure and security were downloaded more than 500 million times in HashiCorp's FY2024 and include:

- **Terraform** – provides organizations with a single workflow to provision their cloud, private datacenter, and SaaS infrastructure and continuously manage infrastructure throughout its lifecycle

- **Vault** – provides organizations with identity-based security to automatically authenticate and authorize access to secrets and other sensitive data

- **Additional products** – *Boundary* for secure remote access; *Consul* for service-based networking; *Nomad* for workload orchestration; *Packer* for building and managing images as code; and *Waypoint* internal developer platform

**Transaction Details**

Under the terms of the agreement, IBM will acquire HashiCorp for $35 per share in cash, or $6.4 billion enterprise value, net of cash. HashiCorp will be acquired with available cash on hand.

The boards of directors of IBM and HashiCorp have both approved the transaction. The acquisition is subject to approval by HashiCorp shareholders, regulatory approvals and other customary closing conditions.

The Company's largest shareholders and investors, who collectively hold approximately 43% of the voting power of HashiCorp's outstanding common stock, entered into a voting agreement with IBM pursuant to which each has agreed to vote all of their common shares in favor of the transaction and against any alternative transactions.

The transaction is expected to close by the end of 2024.

*Potential Conflicts of Interest*

32. The breakdown of the benefits of the deal indicates that HashiCorp insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of HashiCorp.

33. Company insiders, currently own large, illiquid portions of Company stock, Company options, and Company Restricted Stock Units, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Name | Shares of Common Stock Held Directly[1] | | HashiCorp Options[2] | | HashiCorp Restricted Stock Units[3] | | Total ($) |
|---|---|---|---|---|---|---|---|
| | Number of Shares (#) | Value of Shares ($) | Number of Shares (#) | Value of Shares ($) | Number of Shares (#) | Value of Shares ($) | |
| David McJannet | 3,341,819 | 116,963,665 | 3,433,638 | 120,177,330 | 931,289 | 32,595,115 | 269,736,110 |
| Armon Dadgar. | 17,749,373 | 621,228,055 | 315,084 | 11,027,940 | 406,861 | 14,240,135 | 646,496,130 |
| Navam Welihinda | 189,681 | 6,638,835 | 182,539 | 6,388,865 | 377,761 | 13,221,635 | 26,249,335 |
| Susan St. Ledger | 278,672 | 9,753,520 | — | — | 356,331 | 12,471,585 | 22,225,105 |
| Marc Holmes | 30,022 | 1,050,770 | 289,682 | 10,138,870 | 284,025 | 9,940,875 | 21,130,515 |
| Michael Weingartner | — | — | — | — | — | — | — |
| Brandon Sweeney[4] | 361,983 | 12,669,405 | — | — | — | — | 12,669,405 |
| Todd Ford | 117,655 | 4,117,925 | — | — | 8,113 | 283,955 | 4,401,880 |
| David Henshall | 22,944 | 803,040 | — | — | 15,177 | 531,195 | 1,334,235 |
| Glenn Solomon | 415,808 | 14,553,280 | — | — | 7,406 | 259,210 | 14,812,490 |
| Sigal Zarmi | 52,430 | 1,835,050 | — | — | 16,870 | 590,450 | 2,425,500 |

34. Moreover, certain employment agreements with certain HashiCorp executives

entitle such executives to severance packages, should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total ($)[4] |
|---|---|---|---|---|
| David McJannet | 706,284 | 32,595,115 | 35,298 | 33,336,697 |
| Navam Welihinda | 560,627 | 13,221,635 | 35,298 | 13,817,560 |
| Armon Dadgar | 524,734 | 14,240,135 | 24,076 | 14,788,945 |
| Susan St. Ledger | 670,970 | 12,471,585 | 10,438 | 13,152,993 |
| Marc Holmes | 506,639 | 9,940,875 | 35,298 | 10,482,812 |
| Brandon Sweeney[5] | — | — | — | — |

| Named Executive Officer | Base Salary Severance ($) | Target Annual Bonus Severance ($) | Transition Payment ($) | Total ($) |
|---|---|---|---|---|
| David McJannet | 500,000 | 206,284 | — | 706,284 |
| Navam Welihinda | 435,000 | 125,627 | — | 560,627 |
| Armon Dadgar | 435,000 | 89,734 | — | 524,734 |
| Susan St. Ledger | 475,000 | 195,970 | — | 670,970 |
| Marc Holmes | 420,000 | 86,639 | 300,000 | 806,639 |

35. The Proxy Statement fails to adequately all communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

36. Thus, while the Proposed Transaction is not in the best interests of HashiCorp, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Proxy Statement*

37. The HashiCorp Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, fails to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

38. The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

   a. Whether the confidentiality agreements entered into by the Company with IBM differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties; and

   b. Adequately disclose any and all of the communications regarding post-transaction employment during the negotiation of the underlying transaction which must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning HashiCorp Financial Projections*

39. The Proxy Statement fails to provide material information concerning financial projections for HashiCorp provided by HashiCorp management to the Company Board and Qatalyst and relied upon by Qatalyst in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

40. Notably, the Proxy Statement reveals that as part of its analyses, Qatalyst reviewed: "The Financial Projections."

41. The Proxy Statement should have, but fails to provide, certain information in the projections that HashiCorp management provided to the Company Board and Qatalyst. Courts

have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

42. With regard to the *HashiCorp Long-Term Plan*, for the Fiscal Years 2025 through 2029, the Proxy Statement fails to disclose:

   a. Revenue, including the underlying inputs, metrics, and assumptions used to determine same;

   b. Non-GAAP Operating Income (Loss), including the underlying inputs, metrics, and assumptions used to determine same; and

   c. Unlevered Free Cash Flow, including the underlying inputs, metrics, and assumptions used to determine same.

43. With regard to the *Draft HashiCorp Long-Term Plan*, for the Fiscal Years 2024 through 2026, the Proxy Statement fails to disclose:

   a. Revenue, including the underlying inputs, metrics, and assumptions used to determine same;

   b. Non-GAAP Operating Income (Loss), including the underlying inputs, metrics, and assumptions used to determine same; and

   c. Free Cash Flow, including the underlying inputs, metrics, and assumptions used to determine same.

44. The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

45. This information is necessary to provide Plaintiff, in her capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

46. Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Qatalyst' financial analyses, or make an informed decision whether to vote her shares in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Qatalyst*

47. In the Proxy Statement, Qatalyst describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

48. With respect to the *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose:

  a. The Company's weighted average cost of capital utilized;
  b. The inputs, metrics, and assumptions used to determine the discount rates of 13.0% to 16.5% utilized;
  c. The inputs, metrics, and assumptions used to determine the EV/ NTM estimated UFCF multiples range of 30.0x to 40.0x utilized;
  d. The Company's net cash as of January 31, 2024, utilized; and
  e. The number of fully diluted shares of Company common stock outstanding, including restricted stock units, performance-based restricted stock units, and in-the-money stock options as of April 22, 2024, utilized.

49. With respect to the *Selected Companies Analysis*, the Proxy Statement fails to disclose:

  a. The enterprise value ("EV") for each of the selected companies;

      b.   The inputs, metrics, and assumptions used to determine the CY2024E Revenue multiple for each of the selected companies;

      c.   The specific inputs, metrics, and assumptions used to determine the CY2024E Revenue multiples range of 5.0x to 8.0x utilized; and

      d.   The number of fully diluted shares of Company common stock outstanding, including restricted stock units, performance-based restricted stock units, and in-the-money stock options as of April 22, 2024, utilized.

50.    With respect to the *Selected Transactions Analysis*, the Proxy Statement fails to disclose:

      a.   The date upon which each of the selected transactions closed;

      b.   The EV of the target companies utilized;

      c.   The inputs, metrics, and assumptions used to determine the LTM Revenue Multiple for each of the selected transactions;

      d.   The inputs, metrics, and assumptions used to determine the NTM Revenue Multiple for each of the selected transactions;

      e.   The specific inputs, metrics, and assumptions used to determine the LTM Revenue multiples range of 5.0x to 11.0x utilized;

      f.   The specific inputs, metrics, and assumptions used to determine the NTM Revenue multiples range of 5.0x to 9.5x utilized; and

      g.   The number of fully diluted shares of Company common stock outstanding, including restricted stock units, performance-based restricted stock units, and in-the-money stock options as of April 22, 2024, utilized.

51.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

52.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder. Moreover, without the key financial information and

related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public HashiCorp stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

53. Plaintiff repeats all previous allegations as if set forth in full herein.

54. Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

55. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

56. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

57. The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

58. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

59. The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

60. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

61. Plaintiff repeats all previous allegations as if set forth in full herein.

62. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

63. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

64. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of HashiCorp's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

65. The Individual Defendants acted as controlling persons of HashiCorp within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause HashiCorp to engage in the wrongful conduct complained of herein. The Individual Defendants controlled HashiCorp and all of its employees. As alleged above, HashiCorp is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A.   Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: June 10, 2024

**BRODSKY SMITH**

By: *Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*